Morris Schwalb, J.
(dissenting). The 54-count information in this case charges the author and the director-producer of a certain stage play entitled “ Che,” as well as others, including the actors, involved in its production, with the crimes of obscenity, public lewdness, consensual sodomy and conspiracy (Penal Law, §§ 235.05, 245.00, 130.38, and 105.00).
The play was performed before a small audience in a so-called “off off-Broadway” store theatre, as distinguished from a Broadway or off-Broadway theatre. Off off-Broadway is regarded as the present day theatre of experimentation.
The play is a rather mediocre one, and it is not entirely clear what its dominant theme is. It appears to pose a confrontation between revolutionary forces, on the one hand, as symbolized by a central character evidently modeled on the late Cuban revolutionary leader, Che Guevara — and this country, on the other hand — as represented by another central character depicted as “ the President.” It further appears to address itself to the subjects of politics and sex and the use and abuse of sex in revolutionary politics, power and abuse of power, and political and sexual repressions.
The performance time of the play is one and a half hours without any intermission. There are about seven scenes, varying in time on stage from seconds to several minutes, in which there are portrayed simulated acts of copulation, sodomy, attempted self-sodomy, defecation and other distasteful acts. In addition, the central male character who portrays “the President” appears nude throughout the play except for a high hat and a sash around his waist. It is on these scenes that the charges of obscenity and other violations of the Penal Law are predicated.
It is noteworthy that the People never presented the entire play to the court and this gap was not filled by the defense even though running throughout the trial.
Under the standards most recently announced by the United States Supreme Court, there are three elements which must *986 each be met before the Federal Government or a State may condemn a book or a stage or motion picture presentation as obscene, consistently with the guarantees of the First Amendment to the United States Constitution.
It “ must then be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.” (Memoirs v. Massachusetts, 383 U. S. 413, 418.) Substantially the same standards are indeed embodied in the definition of obscenity set forth in the New York Penal Law (§ 235.00, subd. 1).
Under the foregoing criteria, it is not sufficient to establish merely the elements of a dominant appeal to a prurient interest in sex and an affront to contemporary community standards. Even though those criteria are met, a publication or stage or film presentation “ cannot be proscribed unless it is found to be uMerly without redeeming social value,” and its “ social value * * * can neither be weighed against nor canceled by its prurient appeal or patent offensiveness.” (See Memoirs v. Massachusetts, 383 U. S. 418-420, supra; United States v. A Motion Picture Film Entitled “ I Am Curious-Yellow ”, 404 F. 2d 196, 200 [2d Cir.] [concurring opn. of Friendly, C. J.].) There appears, however, to be the further limitation that the offensive sexual episodes in a book or stage or film presentation, which is found not to be utterly without social value, must bear some relevance to the central serious theme of the work. (See United States v. A Motion Picture Film Entitled1‘1 Am Curious-Yellow ”, 404 F. 2d 199, 201, supra.)
Expert witnesses testifying for the defense in this ease, including several eminent drama critics, pointed out that there has in the past few years been a marked change in contemporary community standards with respect to sexual themes in theatrical and film productions. Recent productions have thus featured an increasing display of nudity and near nudity, coupled with greater explicitness in the presentation of sexual episodes. Many of us may find such productions patently offensive and in exceedingly poor taste. The question, however, as respects any challenged production, is whether it is obscene in the constitutional sense, and, as previously noted, so long as it cannot be found to be utterly without social value and the nudity and sex scenes have some relevance to the serious purpose of the work, the production falls within the protection of the First Amendment.
*987 Directly in point is the decision of the United States Court of Appeals for the Second Circuit in relation to ¡the motion picture, “ I Am Curious — Yellow. (United States v. A Motion Picture Film Entitled “I Am Curious — Yellow”, 404 F. 2d 196, supra.) The film in that case included a number of scenes depicting a nude couple, sexual intercourse under unusual circumstances, and oral-genital activity. The court further noted that ‘ ‘ the sexual content of the film is presented with greater explicitness than has been seen in any other film produced for general viewing ” (404 F. 2d 198). The court held, however, that the film could not be held to be obscene in the constitutional sense, since it could not be found to be utterly without redeeming social value in view of the serious theme it sought to present, and the nudity and sexual episodes could not be deemed to be wholly irrelevant to the central theme. The court further noted that it was extremely doubtful that the work could be characterized as posing a dominant appeal to a prurient interest in sex (404 F. 2d 199), but the court indicated that the film would be entitled to the protection of the First Amendment even on the basis of the element of social value alone (404 F. 2d 199-200, 200-201).
Regardless of the merits of the play before this court, it seems clear, as confirmed by the testimony of the defendants’ expert witnesses, that the play “ does present ideas and does strive to present these ideas artistically” and thus “ falls within the ambit of intellectual effort that the first amendment was designed to protect.” (See United States v. A Motion Picture Film Entitled “I Am Curious — Yellow”, 404 F. 2d 200, supra.) The testimony of the defendants’ expert witnesses further confirmed that the nude and sexual scenes in the play were relevant to the play’s central theme. The expert witnesses’ testimony also showed that the off off-Broadway threatre in which the play was presented generally caters to a small audience of avant garde enthusiasts who would not be as easily shocked as those attending a Broadway or even off-Broadway production. (Cf. Mishkin v. New York, 383 U. S. 502.)
It is unnecessary to determine whether the production before this court is patently offensive to contemporary community standards or whether its dominant theme can be said to appeal to a prurient interest in sex. It is sufficient for the purposes of this case that the "play cannot be found to be utterly without redeeming social value and that the challenged nudity and sex scenes cannot be said to be wholly irrelevant to the serious theme of the work.
*988 Under the circumstances, it is my opinion that the First Amendment is an insuperable bar to the prosecution in ¡this case and that the defendants should be acquitted.
Yeargin, J., concurs with Goldberg, P. J.; Schwalb, J., dissents in opinion.